IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THE LOCAL SPOT, INC. d/b/a THE LOCAL, et al., | ) ) ) |
| Plaintiffs, | ) NO. 3:20-cv-00421 |
| | ) JUDGE RICHARDSON |
| v. | ) ) |
| WILLIAM B. LEE, et al., | ) ) |
| Defendants. | ) |

## ORDER

On the evening of July 6, 2020, Plaintiffs filed a Motion for Temporary Restraining Order (Doc. No. 31, "Motion"), whereby they requested that the Court issue a temporary restraining order ("TRO") with three different components, each applicable to particular Defendants associated with the government of Metropolitan Nashville-Davidson County. Specifically, Plaintiffs sought a TRO: (1) enjoining Metro Defendants (*i.e.*, Mayor John Cooper and Chief Medical Director of Health Michael Caldwell)[1] from enforcing Health Director Order 9 as it pertains to the closure of Plaintiffs' businesses; (2) enjoining the Metro Beer Permit Board and Director Caldwell, respectively, from continuing to prosecute a citation issued by the Metro Beer Permit Board against Kid Rock's and two citations issued by the Metro Health Department, one against Kid Rock's and one against Honky Tonk Central; and (3) preventing Metro Defendants from continuing to selectively enforce Metro's health orders against restaurants and bars. (*Id.* at 2-4). Defendants replied on Wednesday, July 8, 2020. (Doc. No. 42, "Reply").

---

[1] This definition of "Metro Defendants" is found in Plaintiffs' memorandum in support of the Motion. (Doc. No. 32 at 2).

Also on Wednesday, July 8, 2020, the Court ordered the parties to each file a supplemental brief addressing whether the first of the three requested provisions—relating to Health Order 9—could appropriately be grounds for a TRO given that it is not referenced in the Amended Verified Complaint for Declaratory Judgment and Injunctive Relief (Doc. No. 23), which was filed before Health Order 9 was issued. In response, Plaintiffs filed a Motion to Supplement Pleadings (Doc. No. 51, "Motion to Supplement") along with a proposed Second Amended Verified Complaint for Declaratory Judgment and Injunctive Relief (Doc. No. 51-1), which amended Doc. No. 23 by adding (cursory) allegations regarding Health Order 9.[2] Defendants responded in opposition to the Motion to Supplement on Thursday, July 9, 2020. (Doc. No. 54). On Friday, July 10, 2020, the Court held a conference call at which time the undersigned announced his decision on the then-pending motions ("July 10 Conference Call").

Near the beginning of the July 10 Conference Call, the undersigned explained that whether the Motion to Supplement was governed by Fed. R. Civ. P. 15(a) or instead by Fed. R. Civ. P. 15(d), he found in his discretion that the Motion to Supplement should be granted. As the undersigned then explained, TROs and preliminary injunctions are considered preventive, prohibitory, or protective measures taken pending resolution on the merits, *see Clemons v. Board of Educ. of Hillsboro, Ohio*, 228 F.2d 853, 856 (6th Cir. 1956), and are considered extraordinary relief intended solely to preserve the status quo. *See Stein v. Thomas*, 672 Fed. App'x 565, 572 (6th Cir. 2016) ("[A] temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits[.]"); *Detroit*

---

[2] As the Court noted on the July 10 Conference Call, despite the captions of Doc. Nos. 23 and 51-1, each of these complaints requests not only declaratory and injunctive relief, but also damages and other forms of monetary relief.

*Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, Int'l Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972).

A TRO should be granted only if the movant carries his burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The court must consider and balance four factors in determining whether to afford such relief: (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the injunction's impact on the public interest. *Nat'l Viatical, Inc. v. Universal Settlements, Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013).

Although these four factors are "factors to be balanced, not prerequisites that must be met," *Michael v. Futhey*, 2009 WL 4981688, at *17 (6th Cir. Dec. 22, 2009) (quoting *Six Clinic Holding Corp., II v. Cafcomp Systems*, 119 F.3d 393, 400 (6th Cir. 1997), they do not carry equal weight. Regarding the third factor, irreparable harm, "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cty. Schools*, 2019 WL 5850408, at *2 (6th Cir. Nov. 8, 2019); *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ("The demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."). Furthermore, "[a] finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. Nat'l Bd. of Medical Exam'rs*, 225 F. 3d 620, 625 (6th Cir. 2000). In deciding whether to grant the TRO requested via the Motion, the Court made its evaluation of these factors based on the current record. The Court does not intend to suggest that any of its findings herein or stated during the July 10 Conference Call are not subject to potential change at later stages in this case based on a changing record.

In addition, in its analysis, the Court's applied the standard of review applicable during a public health pandemic such as the one currently presented by COVID-19. In *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27 (1905), the Supreme Court held that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27; *see League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, No. 20-1581, 2020 WL 3468281, at *2 (6th Cir. June 24, 2020) ("All agree that the police power retained by the states empowers state officials to address pandemics such as COVID-19 largely without interference from the courts." (citing *Jacobson*, 197 U.S. at 29)). During a health pandemic, the court's power of review is not entirely negated, but it is limited to asking whether the governing authorities have taken action in "an arbitrary, unreasonable manner" or through "arbitrary and oppressive regulations." *In re Abbott*, 956 F.3d 696, 784 (5th Cir. 2020) (quoting *Jacobson*, 197 U.S. at 28, 38).

As the undersigned explained during the July 10 Conference Call, the Court found that based on the current record and under the applicable standards, Plaintiffs did not demonstrate that they were likely to succeed on the merits of their claims relating to the first of the three requested provisions (regarding Health Order 9). The Court also found that Plaintiffs did not demonstrate that they would suffer irreparable harm absent a Court order enjoining enforcement of Health Order 9.

Regarding the second provision, "[courts] have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). This strict duty does not always apply, however. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that, absent "special circumstances," federal courts must decline to exercise jurisdiction when granting the plaintiff

4

relief would entail enjoining a pending state criminal prosecution of the plaintiff. *Id.* at 41. That holding flowed from the general principle that courts of equity should refrain from enjoining a criminal prosecution when the federal plaintiff "'has an adequate remedy at law and will not suffer irreparabl[e] injury if denied equitable relief.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Younger*, 401 U.S. at 43–44)). Such equitable restraint prevents courts from encroaching on the role of the jury, avoids duplicative judicial proceedings and sanctions, and demonstrates a "respect for state functions" that is appropriate in our federal system of government. *Id.* (quoting *Younger*, 401 U.S. at 44); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. Mar. 20, 2019) (explaining that the two main sources of the abstention doctrine are "the constraints of equity jurisdiction and the concern for comity in our federal system" (quoting *Gilbertson v. Albright*, 381 F.3d 965, 970 (9th Cir. 2004))).

*Younger* abstention has now extended substantially beyond its original context to bar relief in certain civil actions. *Sprint Commc'ns*, 571 U.S. at 77. In addition to state criminal prosecutions, the Supreme Court has identified two additional categories of state proceedings that trigger *Younger* concerns: (1) "particular state civil proceedings that are akin to criminal prosecutions[;]" and (2) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns*, 571 U.S. at 72-73 (citations omitted); *Xcaliber Int'l, Ltd. v. Gerregano*, 290 F. Supp. 3d 747, 752 (M.D. Tenn. 2018). In addition, the Supreme Court recently clarified—and narrowed—what sort of administrative actions are "akin to a criminal prosecution." *Sprint Commc'ns*, 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). The Court explained the following:

> Such enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act. *See, e.g., Middlesex*, 457 U.S. at 433–434, . . . (state-initiated disciplinary proceedings against lawyer for violation of state ethics rules). In cases of this genre, a state actor

5

is routinely a party to the state proceeding and often initiates the action. *See, e.g., Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 . . . (1986) (state-initiated administrative proceedings to enforce state civil rights laws); . . . . Investigations are commonly involved, often culminating in the filing of a formal complaint or charges. *See, e.g., Dayton*, 477 U.S., at 624, . . . (noting preliminary investigation and complaint); *Middlesex*, 457 U.S. at 433, . . . (same).

*Sprint Commc'ns*, 571 U.S. at 79-80. Once the Court has determined that a case falls into one of these three categories, the Court must "analyze the case 'using a three-factor test laid out in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982).'" *Aaron v. O'Connor*, 914 F.3d 1010, 1018 (6th Cir. 2019) (quoting *Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017)) ("Middlesex Factors"). Under that test, abstention is appropriate if: "(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims . . . ." *Id.* (quoting *Doe*, 860 F.3d at 369).

Here, the Court found that the *Younger* abstention doctrine applies to the second of the three requests, whereby Plaintiffs Kid Rock's, Honky Tonk Central, and Timothy Stephen Smith ask that this Court enjoin Metro from continuing to prosecute three citations currently pending against Plaintiffs: (1) two citations issued by the Health Department on June 12, 2020, which are scheduled for a hearing before the Davidson County Environmental Court on July 15, 2020, and (2) one citation issued by the Metropolitan Nashville-Davidson County Beer Permit Board, for which no hearing date has been set. Specifically, the Court found that the proceedings pending before the Metropolitan Nashville-Davidson County Beer Permit Board and Davidson County Environmental Court are akin to criminal proceedings and satisfy the *Middlesex* Factors. Accordingly, pursuant to *Younger*, the Court will abstain from exercising jurisdiction over the second request until such time as the applicable citations are finally resolved in state administrative

and (in the event of any appeals) state court proceedings.³ Likewise, as further announced at the July 10 Conference call, the Court will abstain with respect to all other aspects of (including all other kinds of relief requested in) the claims in the Second Amended Complaint upon which the second request in the Motion was based.⁴

## CONCLUSION

After reviewing the briefs, the attachments thereto, and the above-stated standards, for the reasons stated above and on the record during the July 10 Conference Call: (1) Plaintiffs' Motion to Supplement Pleadings (Doc. No. 51) is **GRANTED**, and thus the Clerk is **DIRECTED** to separately filed Doc. No. 51-1, which shall become the operative complaint in this case;⁵ (2) Plaintiffs' Motion for Temporary Restraining Order (Doc. No. 31) is **DENIED**; and (3) the Court will stay this litigation, under the *Younger* abstention doctrine, as to any aspect of the claims related to the issuance and prosecution of the three applicable citations, subject to any party's prerogative to move to lift the stay on the ground that state administrative and/or court proceedings have been finally concluded with respect to all three citations.

---

³ Regarding the third requested aspect of the Motion—*i.e.*, that the Court enjoin Metro Defendants from continuing to selectively enforce Metro's health orders against restaurants and bars—the Court finds that this request for relief is far too vague. The Court does not know, and Plaintiffs do not explain, what exactly the Court should enjoin in order to enjoin "selective enforcement" of Metro's health orders. And the Court is unsure what status quo Plaintiffs seek to maintain in this regard or why any such purported status quo is in fact properly deemed the status quo; this counsels strongly against granting the third request. *See Stein*, 672 Fed. App'x at 572 ("[A] temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits[.]"); *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (noting that the purpose of a preliminary injunction is to preserve the status quo until the district court can hold a trial on the merits). Accordingly, during the July 10 Conference Call, the undersigned denied Plaintiffs' request regarding provision 3.

⁴ As far as the Court can tell, claims for relief (including money damages) related to the issuance and prospective prosecution of the citations are encompassed within multiple counts of the Second Amended verified Complaint (Doc. No. 51-1). The Court will abstain with respect to any aspect of any count that is based upon alleged statutory or constitutional violations related to the citations in particular.

⁵ The time for Defendants to respond to such newly operative complaint shall begin to run as of the time of its separate filing by the Clerk.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE